IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHARIF COPELAND, *Petitioner*, v. BERNEDETTE MASON *et al.*, *Respondents*. | Civil Action No. 20-cv-2926 |

MEMORANDUM OPINION

GOLDBERG, J.                                                                                       October 10, 2023

Sharif Copeland ("Petitioner") has filed a petition for a writ of habeas corpus challenging his 2011 conviction for third degree murder and other crimes. Respondent is represented by the Philadelphia District Attorney's Office. For the reasons set out below, the petition will be denied.

I.      FACTUAL AND PROCEDURAL HISTORY

   A.      Trial and Direct Appeal

On July 18, 2011, following a jury trial in the Court of Common Pleas of Philadelphia County, Petitioner was convicted of third-degree murder, carrying a firearm without a license, and possessing an instrument of crime. Commonwealth v. Copeland (Copeland I), No. 315 EDA 2012, at *1-2 (Pa. Super. Ct. November 20, 2012). These charges stemmed from the October 1, 2009 shooting of Rashawn Woodson. Id. at *2. The trial court summarized the facts of the crime in the light most favorable to the prosecution as follows:

> On October 1, 2009, at approximately 8 p.m., Sean Griffith had just left his girlfriend's house on McKean Street when he ran into his cousin Rashawn Woodson and Mr. Woodson's girlfriend, Tiera Hinson. The three stood at the corner of Norwood Street and McKean Street talking for a few minutes, before

1

> Ms. Hinson began to walk away. At that point, [Petitioner] walked up to Mr. Woodson and "threw his shoulder" into him. Mr. Woodson laughed at [Petitioner], who then pulled a silver .22 caliber handgun out of his waistband. Mr. Woodson began to run away, but [Petitioner] chased him and shot at him two times. One of the gunshots hit Mr. Woodson in his back, entering his lung.
>
> Mr. Woodson collapsed onto the sidewalk in front of 2012 Norwood Street, coughing up blood. Mr. Griffith called 911 on his cell phone as [Petitioner] ran away from the scene. Police arrived and immediately transported Mr. Woodson to the University of Pennsylvania Hospital, where he was pronounced dead. The bullet had ruptured the blood vessels in his lung, causing him to die from internal bleeding. [Petitioner] was arrested the next day.

Id.

The evidence against Petitioner consisted, in substantial part, of witnesses' prior inconsistent statements, which were read to the jury as affirmative evidence of guilt under Pennsylvania's Rules of Evidence. First was Sean Griffith, the victim's cousin, who told police he saw Petitioner shoot the victim. Copeland I at *6. Griffith recognized Petitioner because he knew him from school. Id. At trial, "Griffith recanted his statement and testified that he didn't remember where he was on the night of the shooting, he did not know who shot and killed his cousin, and that [Petitioner] did not shoot his cousin." Commonwealth v. Copeland (Copeland II), No. 2892 EDA 2018, 2019 WL 5448693, at *1 (Pa. Super. Ct. Oct. 24, 2019). "Griffith testified that the Detectives told him if he didn't tell them something then he was going to be there for a long time, so he just told them what they wanted to hear." Id.

Another eyewitness, Tiera Hinson, was the victim's girlfriend and knew Petitioner from school and the neighborhood. Copeland I at *6. She gave a statement to police in which she described being present near the scene of the shooting and seeing Petitioner flee immediately after she heard gunshots. Copeland II, 2019 WL 5448693, at *2. Like Griffith, Hinson testified at trial that she did not remember anything. Id.

Bijah Freeman testified to her recollections at trial and therefore her statement to police was not read to the jury. Freeman did not witness the shooting but testified that she was walking with Petitioner in the vicinity of the shooting around the time it occurred. Copeland II, , 2019 WL 5448693, at *1. After Freeman and Petitioner parted ways, Freeman heard gunshots, and shortly thereafter saw Petitioner "running toward a gold car." Id. Freeman was twelve years old at the time. Commonwealth v. Copeland (Copeland III), No. 579 EDA 2022, at *10 (Pa. Super. Ct. November 29, 2022).

Based on this evidence, Petitioner was convicted and sentenced to a term of incarceration of 20 to 40 years. Copeland I at *2. On direct appeal, the Pennsylvania Superior Court upheld Petitioner's conviction as supported by the evidence. Id. at *9-10.

### B.     First PCRA Proceeding

On December 17, 2013, Petitioner filed a petition under Pennsylvania's Post-Conviction Relief Act (PCRA) in the Court of Common Pleas of Philadelphia County. Copeland II, 2019 WL 5448693, at *2. As relevant here, Petitioner argued that his conviction was unlawful because: (1) trial counsel was ineffective for failing to call an alibi witness, Jamal Graves; (2) trial counsel was ineffective for failing to elicit testimony from Griffith that detectives threatened to charge him with the murder if he did not incriminate Petitioner; and (3) trial counsel was ineffective for failing to challenge Freeman's testimony. Id. Following a hearing, the Court of Common Pleas denied the petition. Id.

On appeal from that decision, the Superior Court determined that Petitioner "abandoned" his claim of trial counsel's alleged failure to challenge Freeman's testimony and thus declined to address it. Copeland II, 2019 WL 5448693, at *2 n.3. On the remaining issues, the Superior Court affirmed the Court of Common Pleas' determination that Petitioner had failed to make out a claim for ineffective assistance of counsel.

As to trial counsel's alleged failure to call an alibi witness, the Superior Court affirmed the Court of Common Pleas' factual determination that trial counsel "was never told about the existence of this alibi witness." Copeland II, 2019 WL 5448693, at *6. In addition, the Superior Court determined that the alleged alibi witness "did not actually establish an alibi." Id. The witness, Jamal Graves, was a barber who allegedly could have testified that Petitioner was getting a haircut around the time of the murder. But the Court of Common Pleas found, and the Superior Court affirmed, that Graves's barbershop was near enough to the scene of the shooting that Petitioner could have left the barbershop and shot the victim without contradicting Graves's timeline. Id.

With respect to trial counsel's alleged failure to develop evidence that detectives coerced Griffith's statement, the Superior Court determined that Petitioner could not show prejudice. Petitioner's claim was that trial counsel should have elicited testimony from Griffith that detectives threatened to charge him with the murder if he did not incriminate Petitioner. The Superior Court observed that the jury already heard testimony that Griffith was coerced, and concluded that the additional "detail" that the manner of coercion consisted of threats of criminal charges was not sufficient to create a "reasonable probability that, but for counsel's error, the outcome of the trial would have been different." Copeland II, 2019 WL 5448693, at *5.

### C.     Second PCRA Proceeding

Petitioner filed a second PCRA petition on February 10, 2021, based on newly obtained affidavits. Copeland III at *4. As relevant here, Petitioner claimed that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to turn over evidence that one of the detectives on his case, James Pitts, had engaged in prior misconduct that created doubt about his treatment of the witnesses in Petitioner's trial. However, Petitioner failed to press his Brady claim on appeal, and the Superior Court accordingly did not address it. Id. at *4 n.3. Petitioner also raised several

4

state-law newly discovered evidence claims, which the Court of Common Pleas rejected based on its credibility findings, affirmed on appeal.

### D. Federal Habeas Proceeding

Petitioner filed a petition for a writ of habeas corpus in this Court on June 8, 2020. The case was initially assigned to the Honorable Eduardo C. Robreno. Judge Robreno permitted Petitioner to file an amended Petition on February 19, 2021. Federal proceedings were then stayed while Petitioner exhausted some claims in state court, after which Petitioner filed a supplemental habeas petition on March 15, 2023.

This case was reassigned from Judge Robreno to my docket on July 11, 2023.

## II. LEGAL STANDARD

A federal district court may consider a petition for a writ of habeas corpus on behalf of a person convicted by a state court only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In reviewing such a petition, federal courts must give "deference" to the determinations of the state courts. Harrington v. Richter, 562 U.S. 86, 101 (2011). In particular, where a claim was previously adjudicated in state court, a federal court on habeas review may not upset the state court's decision unless an exception enumerated in § 2254(d) applies. Those exceptions are: (1) the state court's decision "was contrary to … clearly established Federal law, as determined by the Supreme Court of the United States"; (2) the state court's decision "involved an unreasonable application" of such law; or (3) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d).

In addition, Congress has placed limits on the ability of habeas petitioners to develop new evidence to support their claims in federal court when they failed to develop that evidence in state

court. See § 2254(e)(2). In such a case, the federal court may not hear additional evidence unless the petitioner meets "one of two narrow exceptions, see 28 U.S.C. § 2254(e)(2)(A), and demonstrates that the new evidence will establish his innocence 'by clear and convincing evidence,' § 2254(e)(2)(B)." Shinn v. Ramirez, 142 S. Ct. 1718, 1728 (2022).

### III. DISCUSSION

Petitioner's amended and supplemental habeas petitions challenge his state convictions on numerous grounds. Those grounds are addressed below.

#### A. Ineffective assistance of counsel for failing to develop evidence that detectives coerced Griffith by threatening to charge him with the murder

In this ground, Petitioner re-raises the claim from his first PCRA petition that trial counsel was ineffective for failing to elicit testimony that detectives coerced Griffith's statement by threatening to charge him with the murder. As set out above, the state court determined this claim lacked merit because the jury already heard that Griffith was coerced, and the additional detail about the manner of coercion was not so important as to affect the outcome at trial. Copeland II, 2019 WL 5448693, at *5.

To make out a claim for ineffective assistance of counsel, Petitioner must show that trial counsel's "performance was deficient" and that counsel's deficient performance caused prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). Defense counsel's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. "[T]he proper standard for attorney performance is that of reasonably effective assistance." Id. Prejudice is shown if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Because the state court addressed the merits of this claim, Petitioner must overcome the bar of § 2254(d) before he may obtain federal habeas relief. Rolan v. Coleman, 680 F.3d 311, 321 (3d Cir. 2012). Petitioner must therefore show that the state court acted unreasonably in concluding that Petitioner was not prejudiced by counsel's failure to develop evidence that detectives threatened to charge Griffith with the murder.

Petitioner has not shown that the state court's decision was unreasonable. The state court had a basis for concluding that additional testimony about the manner of coercion was not significant in light of what Griffith had already told the jury—namely, that Griffith disavowed his statement to police and claimed to have been coerced, yet the jury still credited Griffith's prior statement over his in-court recantation. Because reasonable minds could disagree as to whether Petitioner had shown prejudice, the state court's decision will not be overturned on federal habeas review, and this claim will be denied.

**B.  Ineffective assistance of counsel for failing to develop evidence that detectives coerced Freeman**

Petitioner also claims that trial counsel was ineffective for failing to develop evidence that Freeman's trial testimony was coerced. Petitioner offers an affidavit from Freeman, in which she claims that, contrary to her trial testimony, she immediately went inside a house after hearing the gunshots and thus could not have seen Petitioner running toward a gold car. Freeman explains that she was handcuffed while interrogated and not allowed to contact her mother, and that detectives typed up a statement for her that she did not actually give. She claims that on the day of trial, she was shown the fabricated statement and told to testify to it or she would go to jail. Petitioner claims that trial counsel should have elicited these facts at trial.

The transcript of the PCRA hearing on Petitioner's second PCRA petition shows that Petitioner never developed evidence to support a federal ineffective assistance of counsel claim.

7

There is no testimony from trial counsel, no explanation for why trial counsel should have known to develop the allegedly missing evidence, and no argument as to how trial counsel should have questioned Freeman differently. Instead, Petitioner only pressed a state-law newly discovered evidence claim, which is not cognizable on federal habeas review. Estelle v. McGuire, 502 U.S. 62, 67 (1991). The state court rejected that claim after finding Freeman's new recantation "nearly incomprehensible and entirely incredible." Copeland III at *13.

Petitioner has procedurally defaulted this claim by not raising it in state court, and, in addition, has failed to develop the evidence needed to support it. See Shinn, 142 S. Ct. at 1728. Moreover, to the extent Petitioner seeks to excuse his procedural default under Martinez v. Ryan, 566 U.S. 1 (2012), Petitioner cannot do so because he cannot show that the claim is "substantial" in light of the state court's credibility determination. Id. at 17. The state court's finding that Freeman's testimony was "incomprehensible" and "incredible" is presumed correct, and Petitioner has offered no reason to overcome that presumption. See 28 U.S.C. § 2254(e)(1). Petitioner thus failed to prove that Freeman's trial testimony was false or that trial counsel could have developed exculpatory evidence from Freeman.

Petitioner argues that "[i]n finding Freeman incredible, the PCRA Court abused its discretion and failed to adequately consider the witness's young age and that her testimony was likely tainted by the detectives' overly suggestive tactics." (Supplemental Petition at 21.) But the factors Petitioner identifies are just two among many. The state court observed Freeman testify and, in particular, heard her constantly shifting versions of events, which are detailed in the state court's opinion. Copeland III at *10-13. Reasonable minds could disagree on which of these factors deserved more weight, and, therefore, the state court's credibility determination was not

unreasonable. Accordingly, Petitioner's claim that trial counsel was ineffective for failing to develop evidence of Freeman's alleged coercion will be denied.

### C. Ineffective assistance for failing to present the alibi testimony of Jamal Graves

Petitioner next re-raises his claim from his first PCRA petition that Graves, a barber, could have testified that Petitioner was getting a haircut at the time of the murder. Petitioner thus claims trial counsel was ineffective for failing to develop this evidence.

As explained above, the state court rejected this claim for two reasons: (1) trial counsel testified credibly that Petitioner never told him about Graves, so trial counsel was not ineffective for failing to obtain Graves as a witness; and (2) Graves's barbershop was close enough to the scene of the shooting that, even if Graves's testimony were believed, Petitioner could still have committed the crime. Copeland II, 2019 WL 5448693, at *6.

Petitioner argues that the state court misread the evidence in reaching a conclusion that Graves did not testify credibly at the first PCRA hearing. But Grave's credibility was immaterial to the state court's conclusion that trial counsel had no reason to know of Grave's existence. Similarly, the state court accepted Graves's timeline in concluding that, even if Graves were believed, Petitioner still could have left the barbershop and committed the murder as described by the eyewitnesses. Petitioner has therefore failed to show that the state court's determination was "unreasonable" under § 2254(d).

### D. Insufficiency of evidence

Petitioner re-raises a sufficiency claim, first raised on direct review, that the evidence was insufficient to convict him of murder because it consisted largely of out-of-court statements from witnesses who recanted at trial. As noted, the Superior Court reviewed the trial evidence and concluded that it was sufficient. The Superior Court was not swayed by the fact that two

9

eyewitnesses recanted because "the jury was free to believe the original statements made to the police and to disregard the later recantations." Copeland I at *9.

Petitioner has not cited authority showing that this reasoning was contrary to or an unreasonable application of clearly established federal law, or that the Superior Court misapprehended the facts in applying it. In particular, Petitioner has not shown that it was "clearly established" that a jury could not reasonably rely on prior inconsistent statements in reaching its verdict that Petitioner was the shooter. For these reasons, the state court's decision must be respected and Petitioner's claim on habeas review will be denied.

E. **Failure by prosecution to disclose Detective Pitts's misconduct**

Petitioner re-raises his claim from his second PCRA petition that the prosecution violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to turn over evidence that one of the detectives on his case, James Pitts, had engaged in prior acts of misconduct that called into question his treatment of Griffith and Hinson.

Respondent concedes that evidence existed that Detective Pitts had engaged in misconduct and that this evidence was not turned over to the defense. However, Respondent disagrees that evidence of Pitts's misconduct was material due to Pitts's limited involvement in Petitioner's case. In particular, Respondent disagrees with Petitioner's assertion that Pitts was involved in the questioning of Griffith, the sole eyewitness to the shooting who testified at trial.

The Superior Court declined to address Petitioner's Brady claim because it was not raised in Petitioner's appellate brief. The claim is therefore procedurally defaulted and cannot be raised on federal habeas review unless an exception applies, which Petitioner does not offer. Although Petitioner claims that his PCRA counsel was ineffective for defaulting the claim, post-conviction counsel's ineffectiveness can only excuse a procedural default where the underlying claim is one

10

of trial counsel's ineffectiveness. Davila v. Davis, 582 U.S. 521, 529 (2017). Because this is a Brady claim, it remains defaulted despite PCRA counsel's alleged error.

Petitioner also claims that trial counsel was ineffective for failing to uncover Pitts's misconduct. However, Petitioner failed to develop evidence to support this claim in state court, nor has he meaningfully explained the basis for it in his federal habeas petition. There is no mention of Pitts in the PCRA transcript, and no evidence regarding what investigation trial counsel considered and why such investigation was not done. Absent such evidence, Petitioner cannot make out a claim for ineffective assistance of counsel. See Shinn, 142 S. Ct. at 1735.

### F. Newly discovered evidence related to Spencer's statement

Petitioner finally presents a state-law claim for "newly discovered evidence." (Supplemental Petition at 8.) That evidence allegedly consists of testimony that detectives pressured an individual named Mitchell Spencer, who was not a witness at trial, to give a false statement. Because this is a state-law claim, it is not cognizable on federal habeas review. Estelle, 502 U.S. at 67.

### IV. CONCLUSION

For the reasons set out above, the petition for a writ of habeas corpus will be denied. Because "reasonable jurists [would not] debate whether … the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003), there is no basis to issue a certificate of appealability.

An appropriate order follows.